WALRATH & SHERWOOD LUMBER COMPANY, Respondent, v. FERRIS, et al, Appellants.

(247 N. W. 405.)

(File No. 7504. Opinion filed March 14, 1933.)

*Charles Milner,* of Martin and *W. J. Hooper,* of Gregory, for Appellant.

*Windsor Doherty,* of Winner, and *Hastings Robertson,* of Martin, for Respondent.

WARREN, J. This is an action to establish and foreclose a mechanic's lien against certain farm (real) property located in Bennett county, S. D.

On September 20, 1926, H. A. Kiser, appellant herein, sold and conveyed to one Fud Ferris by warranty deed certain lands in Bennett county, S. D., which included the quarter section of land against which the mechanic's lien is attempted to be enforced, taking back a real estate purchase price mortgage. Fud Ferris went into possession and until March, 1932, was at all times the owner of said land. On September 25, 1929, the mortgage being in default, Kiser commenced foreclosure proceedings by advertisement. At the sheriff's sale on October 21, 1929, Kiser bid in and received a sheriff's certificate of sale. On October 15, 1930, a few days before the period of redemption under the sheriff's certificate of sale would expire, Kiser entered into a contract for extending the time of redemption with Fud Ferris and his wife, Rose Ferris; the latter parties executed and delivered a quitclaim deed to Kiser to be held as "security for the faithful performance of this agreement." Said contract relates and provides in part as follows:

"Whereas, the said party of the first part has foreclosed a real estate mortgage on the following described land situated in Bennett County, South Dakota, * * * and the period of time of redemption from the foreclosure sale of the said premises will expire on October 22, 1930, now, therefore, in consideration of the said party of the first part forbearing to take a sheriff's Deed for the said premises on the said date when time for redemption will expire, to-wit: October 22, 1930, the said parties of the second part hereby agree to pay to the said party of the first part the following sums of money at the time hereinafter specified, to-wit: $1,000.00 on or before January 1st, 1931. $1,000.00 on or before March 1st, 1931.

"In case and provided the said parties of the second part make the payments as above specified they agree to give to the said party of the first part a promissory note secured by and mortgage on the said land above described for the balance then due to the said party of the first part, and the said party of the first part agrees to accept the same in full redemption from the said foreclosure sale.

"Provided, however, that the said parties of the second part shall execute and deliver to the said party of the first part a Quit claim deed for the said premises of even date with this contract,

same to be held by the said party of the first part as security for the faithful performance of this agreement by the said parties of the second part, and in event of the failure of the said parties of the second part to make the payments above specified and at the times specified, then and in that event the said Quit Claim Deed becomes in full force and effect as a conveyance of the above described land by the said parties of the second part to the said party of the first part.

"It is further agreed by the parties hereto, that time shall be the essence of this contract."

On October 29, 1930, the plaintiff lumber company entered into a contract with the defendant Fud Ferris, whereby the plaintiff sold to the defendant lumber and other building material for the construction of a house on the land in question. The materials were furnished between the date of October 29, 1930, and January 26, 1931. Within the time limited by law, on April 25, 1931, the plaintiff filed with the clerk of courts of Bennett county a statement verified by C. S. Kibler, manager, claiming a lien on the real estate for and on account of said lumber and material furnished. It is conceded that Kiser gave no notice from and after the date that he first knew materials were being furnished and the house built on the land, that the improvement was not being made at his instance. The defendants Fud Ferris and wife, having defaulted under the contract of October 20, 1930, a sheriff's deed was issued to Kiser based on the foreclosure and sheriff's certificate of sale of October 21, 1929.

Plaintiff instituted this action to foreclose its mechanic's lien. The circuit court made findings of fact and conclusions of law and entered judgment in favor of the plaintiff thereon. H. A. Kiser has appealed to this court.

The appellant alleges numerous assignments of error, but has argued but one, alleging that the trial court erred in making and entering its seventh Finding of Fact, in the following language: " * * * Both the said contract and quit claim deed were executed by the said parties at the request of the said defendant H. A. Kiser and was intended for and taken in lieu of, the said mortgage and Sheriff's Certificate of Sale which the said H. A. Kiser then held and in full settlement thereof."

It is the contention of the appellant that Ferris was the owner of the land in question, and that the appellant was a prior incumbrancer and lienor, and for that reason his lien was superior to the lien of the respondent. Section 1643, Rev. Code 1919, provides for the instances in which a mechanic's lien can be maintained. Section 1646 provides in part as follows: *"Where Lien Attaches— Notice.* All such liens as against the owner of the land shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other incumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee or incumbrancer without notice, however, no lien shall attach prior to the actual and visible beginning of the improvement on the ground."

Also we note certain provisions of section 1647, which provide as follows: *"Vendors, Consenting Owners.* Whenever land is sold under an executory contract requiring the vendee to improve the same, and such contract is forfeited or surrendered after liens have attached by reason of such improvements, the title of the vendor shall be subject thereto; but he shall not be personally liable if the contract was made in good faith. When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior incumbrancers or lienors shall be deemed to have authorized such improvements, insofar as to subject their interests to the liens therefor. But any person who has not authorized the same may protect his interests from such liens by serving upon the persons doing the work or otherwise contributing to such improvement, within five days after knowledge thereof, written notice that the improvement is not being made at his instance, or by posting like notice, and keeping the same posted, in a conspicuous place on the premises; provided, that as against a lessor no lien is given for repairs made by or at the instance of his lessee."

Under these statutory provisions, if Kiser was not the owner of the land, his lien, as a prior incumbrancer, mortgagee, or lienor, would be superior to the mechanic's lien of the respondent. Wagner v. Wagner et al, 47 S. D. 104, 196 N. W. 499; Big Sioux Lumber Co. v. Miller et al, 57 S. D. 506, 234 N. W. 31.

It must be conceded that prior to October 15, 1930, Kiser was without question a prior incumbrancer, mortgagee, or lienor. What effect then did the making of the contract and quitclaim deed of October 15 and 20, 1930, have on the relationship existing between the parties? We note certain phrasing in the contract as follows: " * * * said parties of the second part shall execute and deliver to the said party of the first part a Quit claim deed for the said premises of even date with this contract, *same to be held by the said party of the first part as security* for the faithful performance of this agreement by the said parties of the second part, and in event of the failure of the said parties of the second part to make the payments above specified and at the times specified, *then and in that event the said quit claim deed becomes in full force and effect as a conveyance of the above described land. * * * "* (For more extended terms of the contract, see first portion of the contract previously quoted.)

A close analysis of the contract between the parties and the evidence before us clearly indicates that, from the time Fud Ferris obtained title from Kiser of the land in question, the title in fee remained in him until Kiser obtained title by sheriff's deed. The portion of the contract that we have just quoted and the italicized portion in the quotation clearly indicates that it was the intention of the parties that the quitclaim deed was only a security for the faithful performance of the contract, and that the quitclaim deed was not to be effective, and that no title should vest in Kiser until there was a default in the payments to be made by Ferris. The legal title did not vest until the sheriff's deed was issued.

The statutes relating to the duties imposed upon an owner to exempt himself from liability could not be applicable to Kiser, as he was in no sense the owner of the land at the time the improvements were made.

We have given careful consideration to the authorities and argument presented by the respondent in support of its contention that appellant will benefit by the improvements placed upon the real property, and, much as we would like to see that the respondent should be reimbursed, yet we feel that the respondent should have exercised ordinary precaution, and, had it exercised due diligence by inquiring about and ascertaining as to the owner-

ship and condition of the title, it would not have found itself in the position it now occupies to its own disadvantage.

The order and judgment appealed from are reversed, with directions to dismiss the foreclosure proceedings.

All the Judges concur.