RUFUS C. JEFFERSON and Others v. MATTHIAS LEITHAUSER and Others.[1]

February 6, 1895.

60 251
80 344

No. 9026.

**Mechanic's Lien — Improvements on Leased Land — Knowledge of Owner.**

An agent was authorized by his principal to make leases of his principal's real estate, to collect monthly rents, to care for and look after the property generally, and to look after the interests of his principal in such real property. *Held*, that notice to such agent that improvements were being

[1] Reported in 62 N. W. 277.

made upon a building situate upon his principal's real estate, which were necessary to save and protect the building, and necessary in order to carry on the business for which it was rented, was notice to the principal, for the purposes of Laws 1889, c. 200, § 5 (G. S. 1894, § 6233).

**Notice to Agent.**
> The uncontradicted evidence *held* sufficient to constitute notice to the agent that improvements were being made upon his principal's real estate.

Appeal by plaintiffs and by the defendants McLeod & Helle and John Jagger from an order of the district court for Ramsey county, Willis, J., denying their motion for a new trial. Reversed.

The facts are stated in the opinion.

' *Owen Morris, F. C. Stevens* and *George E. Budd*, for appellants, cited Fowlds v. Evans, 52 Minn. 551, 54 N. W. 743; Neibles v. Minneapolis & St. L. Ry. Co., 37 Minn. 151, 33 N. W. 332.

*Munn, Boyesen & Thygeson, Stevens, O'Brien, Cole & Albrecht,* and *F. W. Benz,* for respondents.

BUCK, J.    This is an action to enforce a mechanic's lien against lot 3 in block 12 in the city of St. Paul, owned by one of the defendants, the Boston Northwest Real-Estate Company, a corporation. This lot was rented to the respondent George Benz for the term of five years, commencing May 1, 1889, and some time in 1890 he sublet the premises for the remainder of the term of five years to the defendants Smith & Co., and during the year 1893 the defendant Leithauser entered into a contract with Smith & Co. to make certain alterations in the building upon this lot, which alterations the court found to be improvements, and, in making such improvements, Leithauser, the contractor, procured the plaintiffs to furnish certain material, for which they afterwards filed a mechanic's lien upon the premises, although Smith & Co. promised to pay Leithauser therefor.    The defendants McLeod & Helle and John Jagger also furnished the contractor, Leithauser, material which was used in making said improvements, and they duly filed liens for the material so used.    The above-named parties, other than plaintiffs who furnished material, were made defendants.    Upon the trial the court below found that all of the lien claimants were entitled to personal judgments against Leithauser for the amount of their lien claims, but

that they were not entitled to judgment against Benz or the Boston Northwest Real-Estate Company.

The finding of the lower court in favor of the real-estate company was upon the ground that it did not have notice and knowledge of, and never consented to or authorized, the improvements and alterations in the building therein mentioned, and that all contracts entered into and all materials and labor furnished with reference to the alterations of the building in the complaint described, and referred to in the pleadings, were each and all done without the knowledge, authority, and consent of the said defendant the Boston Northwest Real-Estate Company. This company had an agent who resided in the city of St. Paul at the time when the material was furnished for making the improvements on the building situated upon the above-described lot, and at the time when the improvements were being made. Upon the trial this agent testified that his duties, as such agent, were to look after the interest of the company, collect rents, make leases, and look after the property generally, and that this property was one that he was so looking after, and that he knew that there were to be some alterations in the building. The agent was John Townsend, and he collected rents monthly from the lessees of this building, and he says that he thinks that he walked past the building while the improvements were going on. It also appeared in evidence that a person passing the premises would observe these improvements, if he looked in that direction. These improvements were made in the month of March, 1892. On March 3, 1892, the agent, Townsend, wrote a letter to the defendant Benz, saying that he might make changes and alterations of this building, such as raising the roof of the rear building, and make certain interior additions and alterations, but that the expense must be borne by Benz, and, in order to protect the company from liens on this work, he required Benz to furnish a bond in a sufficient sum to cover the cost of the proposed changes, and requesting Benz to let him know about it a day or two before the work commenced, and stating, further, that proper precaution must be made with reference to preserving the strength of the building. On March 7, 1892, this agent again wrote Mr. Benz in regard to strengthening the rear wall of this building in some manner, but stated that he did not think the cost would exceed $50. The building inspector had con-

demned the building, the improvements were necessary, and were of the value of $4,000, of which the company had the benefit. There is some other evidence in the case of the same nature as that above referred to.

Now, it seems to us that the uncontradicted evidence in the case leads irresistibly to the conclusion that this agent, Townsend, had complete notice that these improvements were being made, and, if so, was this notice to the agent, under the facts proven, sufficient in law to constitute notice to the principal, the Boston Northwest Real-Estate Company? The court below, as we have stated, found that the company did not assent to the making of the improvements, and that it did not have notice and knowledge that the same were in fact being made. It does not appear whether this finding was based upon the insufficiency of the facts to constitute notice to the agent, or whether it rested upon the want of authority in the agent, so that notice to him would not be notice to the principal, the real-estate company. But whatever may have been the grounds for its finding, whether intended as one of fact or as a conclusion of law, upon the facts we think that it was erroneous. We have already stated that the uncontradicted facts are sufficient to show that the agent had notice that the improvements were being made, and we think that his authority to act in behalf of his principal in the matter was sufficient, as a matter of law, to have justified and required the court below to have found that such notice to the agent was notice to the principal. In determining this case, we must bear in mind that the question here is not whether the agent had sufficient authority to bind his princi-pal to the making of the improvements, but whether the agent's au-thority, upon the facts stated, was of such a nature that notice to him constituted notice to the principal under Laws 1889, c. 200, § 5 (G. S. 1894, § 6233). That section, among other things, provides that where improvements are made upon the land of another with the knowledge of such owner such land shall be subject to a me-chanic's lien unless such owner shall, within five days after he shall have obtained knowledge of such improvement, give notice that his interests shall not be subject to any lien for the same, by serving a written or printed notice to that effect personally upon all persons performing labor, or furnishing skill, material, or machinery there-for, or shall, within five days after he shall have obtained the knowl-

edge aforesaid or knowledge of the intended erection, construction, alteration, removal, or repair, give such notice as aforesaid by posting and keeping posted a written or printed notice to the effect aforesaid in some conspicuous place upon said land or upon the building or other improvements situate thereon. It is not contended that the owner of the land either posted or served personally any such notice. The improvements made were necessary for the protection and safety of the building, and necessary in order to carry on the business for which it was rented. As the agent was authorized to look after this particular piece of property, the facts just stated were of such a character as would come within the nature and scope of his employment, so far that he would be presumed to have notice of their necessity, and, if made, of their actual existence. But, in addition to this, he had actual notice, and such notice was notice to his principal.

Suppose, under the facts appearing in this case, when the agent discovered that these improvements were being made, that he had posted a notice or served one personally upon the plaintiff, forbidding him making any improvements upon the premises, and stating that his land should not be subject to a lien therefor, and signed the real-estate company's name thereto, by himself as agent, would it not have been effectual as a notice which would have barred the plaintiff from thereafter enforcing his lien? We hardly think that any court would hold otherwise than that such a notice would be a valid and an effective one. Why then, should not the rights and obligations of each party be mutual? If such notice to plaintiff, given by this agent, Townsend, in behalf of his principal, would prevent the creation of a lien, then the notice to the agent of the making of these improvements would be notice to his principal that such improvements were being made. Although the agent failed to communicate to his principal the information which he had acquired in reference to this improvement, that would be immaterial, so far as the rights of this plaintiff are involved. The legal effect of the agent's notice would, in such case, be binding upon the principal. "The facts of which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them, or communicate them to his principal." "In other words, the knowledge or notice must come to an agent who has authority to deal in

reference to those matters which the knowledge or notice affects." Trentor v. Pothen, 46 Minn. 298, 49 N. W. 129.   The present case falls within that rule.   The agent was one whose duty it was to act when he learned the improvements were being made.

Each party has cited Sandberg v. Palm, 53 Minn. 252, 54 N. W. 1109, in support of his view of the case.   That was a case where the agent was only authorized to sell real estate, and it was held that his knowledge that a building was being constructed · upon his principal's land was not notice thereof to the principal for the purposes of Laws 1889, c. 200, § 5 (G. S. 1894, § 6233).   The facts in that case differ widely from those in the case under consideration.   Perhaps the language used by the judge in writing the opinion in that case, viz.: "To make knowledge of an agent equivalent to knowledge of the owner, his authority must be such that he could bind his principal by consenting to so charge the land,"—is too broadly stated, and was not necessary to the decision of the case; yet, as we understand it, that phrase was written with reference to the particular facts of the case before him, and not as a general rule of law, and to mean that an agent having authority to care for the land could bind his principal by consenting to charge the land, where buildings or improvements were made thereon, only so far as such facts would thereby constitute notice to the principal. Therefore, that case would not be in conflict with the views herein expressed.

The order of the court below denying the motion for a new trial is reversed.